UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RICHARD THOMPSON

Case No. 24 CR 225

Judge Andrea Wood

## GOVERNMENT'S POSITION PAPER AS TO THE PRE-SENTENCE INVESTIGATION REPORT AND SENTENCING FACTORS

Defendant, RICHARD THOMPSON, whose criminal history includes more than a dozen felony convictions spanning more than three decades, continued his lengthy pattern of recidivism by robbing a United States postal worker at gunpoint in November 2023. In doing so, he not only stole a United States arrow key, but also deprived her and other United States Postal employees of their sense of security while delivering the United States mail. Given the seriousness of the offense, as well as the need to protect the public and deter others from the same conduct, the government respectfully requests that this Court impose a high-end Guideline sentence of 115 months' imprisonment, a three-year term of supervised release, and restitution in the amount of $9,285.75.

### I.    Background

On May 7, 2024, a grand jury indicted defendant with one count of robbing Individual A of an arrow key, and in effecting such robbery, jeopardizing the life of Individual A by using a dangerous weapon, in violation Title 18, United States Code, Section 2114(a). R. 1. On December 10, 2024, defendant pleaded guilty to the

indictment pursuant to a written plea agreement. R. 16. This matter is set for sentencing on March 14, 2025, at 1:00 p.m.

## II.    Offense Conduct

The offense conduct in this case is set out in the Presentence Investigation Report ("PSR") (R. 17), Supplemental PSR (R. 19), the Government's Version of the Offense ("GVO"), and defendant's plea agreement (R. 56).

On November 10, 2023, defendant rode as a passenger in a vehicle as he and an accomplice looked for a United State Postal Service employee to rob of an arrow key. An arrow key is a universal key the Postal Service issues to its letter carriers and other authorized employees that allows them to open any postal lock installed on mailboxes or building entrance doors throughout the City of Chicago for the purpose of delivering and picking up mail.

At approximately 12:27 p.m., defendant saw Individual A, a USPS mail carrier, delivering mail in her assigned USPS vehicle on the 900 block of North Francisco Avenue in Chicago. Defendant grabbed a firearm and exited his car. He crossed North Francisco Avenue and approached Individual A's USPS vehicle as Individual A was stepping out of the open passenger side sliding door. As defendant advanced toward Individual A, Individual A retreated back through the sliding door and into the rear compartment. Defendant followed Individual A through the sliding door and into the rear compartment, blocking her exit.

Defendant demanded Individual A's arrow key, stating words to the effect of, "Give me the keys." Individual A responded, "Excuse me?" In response, defendant pulled the firearm out of his pocket and displayed it to Individual A. Individual A

2

then gave defendant her arrow key. Defendant told Individual A to "close the door" and exited the USPS vehicle. Defendant ran back north on North Francisco Avenue, reentered a vehicle in a nearby alley, and fled the scene.

## III.    Calculation of the Advisory Guidelines Range

### A.    Offense Level

The government agrees with the offense level calculations set forth in the PSR and that defendant's total adjusted offense level is 24. PSR ¶ 25. The base offense level is 20, pursuant to Guideline § 2B3.1(a). *Id*. ¶ 15. Pursuant to Guideline § 2B3.1(b)(1), the offense level is increased by 2 levels because the property of a post office was taken. *Id*. ¶ 16. Pursuant to § 2B3.1(b)(2)(C), the offense level is increased by 5 levels because a firearm was brandished or possessed. *Id*. ¶ 17. Pursuant to Guideline § 3E1.1(a), the offense level is decreased by 2 levels because defendant has demonstrated acceptance of responsibility for the offense. *Id*. ¶ 23. Pursuant to Guideline § 3E1.1(b), the offense level is decreased by 1 level because defendant timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. *Id*. ¶ 24. Therefore, the total offense level is 24. *Id*. ¶ 25.

### B.    Criminal History Category

The government agrees with the criminal history calculation set forth in the PSR. Defendant's criminal history points equal 10 and his criminal history category is V. PSR ¶ 45.

On or about October 19, 1989, defendant was convicted of armed violence and manufacture/delivery of a controlled substance in the Circuit Court of Cook County and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.2(e), he does not receive criminal history points for this sentence.

On or about October 19, 1989, defendant was convicted of residential burglary in the Circuit Court of Cook County and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.2(e), he does not receive criminal history points for this sentence.

On or about January 27, 1992, defendant was convicted of unlawful possession of a weapon by a felon in the Circuit Court of Cook County and sentenced to two years' imprisonment. Pursuant to Guidelines § 4A1.2(e), he does not receive criminal history points for this sentence.

On or about March 17, 1993, defendant was convicted of robbery in the Circuit Court of Cook County and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.2(e), he does not receive criminal history points for this sentence.

On or about December 21, 1994, defendant was convicted of armed violence and possession of a controlled substance in the Circuit Court of Cook County and sentenced to six years' imprisonment. Pursuant to Guideline § 4A1.2(e), he does not receive criminal history points for this sentence.

On or about June 16, 1998, defendant was convicted of manufacture/delivery of a controlled substance in the Circuit Court of Cook County and sentenced to eight

years' imprisonment. Pursuant to Guideline § 4A1.2(e), he does not receive criminal history points for this sentence.

On or about July 31, 2006, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.2(e), he does not receive criminal history points for this sentence.

On or about August 6, 2008, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.1(a), he receives three criminal history points for this sentence.

On or about May 11, 2012, defendant was convicted of domestic battery in the Circuit Court of DeKalb County and sentenced to 24 days' imprisonment and 18 months' probation. Pursuant to Guideline § 4A1.1(c), he receives one criminal history point for this sentence.

On or about July 26, 2012, defendant was convicted of driving under the influence of drugs, endangering the life and health of a child, and leaving the scene of an accident in the Circuit Court of DuPage County and sentenced to 30 days' imprisonment and 2 years' probation. Pursuant to Guideline § 4A1.1(c), he receives one criminal history point for this sentence.

On or about February 10, 2015, defendant was convicted of manufacture/delivery of a controlled substance in the Circuit Court of Cook County

and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.1(a), he receives three criminal history points for this sentence.

On or about August 5, 2021, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County and sentenced to one year of imprisonment. Pursuant to Guideline § 4A1.1(b), he receives two criminal history points for this sentence.

### C.    Advisory Guideline Range

Based upon a total offense level of 24 and a criminal history category of V, the advisory Guideline imprisonment range is 92 to 115 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. PSR ¶ 117.

## IV.    Application of the Statutory Sentencing Factors

Sentencing has four purposes: retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). The Court must impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). In doing so, the Court must consider the statutory factors outlined in 18 U.S.C. § 3553(a)(1)-(7), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] (3) the kinds of sentences available.

6

*Id.* § 3553(a)(1)-(3). The Court must also respect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as well as "the need to provide restitution to any victim of the offense." *Id.* § 3553(a)(6)-(7). Finally, the Court must consider the Guideline range and any pertinent policy statements issued by the United States Sentencing Commission. *Id.* § 3553(a)(4)-(5). Although the Sentencing Guidelines are only advisory, "[a]s a matter of administration and to secure nationwide consistency, [they] should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49.

This Court should give serious consideration to the advisory Guidelines range, for several reasons. First, the Guidelines minimize unwarranted sentencing disparities and "remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also Booker v. United States*, 543 U.S. 220, 250, 253 (2005) (noting that "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity" and "diminish[ing] sentencing disparity"). Second, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 42, and the U.S. Sentencing Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (quoting *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007)). Therefore, "its judgments should not lightly be disregarded." *Id.* Finally, the U.S. Sentencing Commission is charged by

7

statute to review and revise the Guidelines as it collects sentencing data from throughout the federal court system, *see* 28 U.S.C. § 994(o), making the Guidelines the product of continuous evolution and improvement. *See Rita v. United States*, 551 U.S. 338, 358 (2007).

### A. Imprisonment

Considering the § 3553(a) factors, the government recommends 115 months' imprisonment. Such a sentence is necessary to promote respect for the law, provide just punishment, and afford adequate deterrence, while also considering the nature and circumstances of the offense and defendant's history and characteristics.

### 1. A High-End Guideline Sentence of 115 Months' Imprisonment Accurately Reflects the Nature and Circumstances of the Offense and Provides Just Punishment

The seriousness of defendant's offense cannot be overstated. He robbed Individual A at gunpoint, in broad daylight, in a residential area, and in the middle of a public street. In doing so, he presented a profound threat both to her and the surrounding public. "A robber with a loaded gun . . . places lives at risk because of the prospect that, should the need or impulse arise, he will commit murder." *United States v. Ray*, 21 F.3d 1134, 1141 (D.C. Cir. 1994). By brandishing a firearm, a robber "has empowered himself to turn the scene violent at will." *Id.* "His threat not only magnifies the chances that he will do just that if anyone gets in his way but also increases the likelihood of a violent response." *Id.* Defendant's actions thus displayed an utter disregard for Individual A's wellbeing, autonomy, and dignity. To the contrary, the manner in which he entered approached her USPS vehicle, cornered

her inside her vehicle, brandished his gun at her, and took her property demonstrated a corrupt air of entitlement buttressed solely by unlawful intimidation.

The PSR details only a small fraction of the pain and suffering that defendant caused. This offense has had a significant and traumatic impact on Individual A. *See* GVO Exhibit 2: Redacted Victim Impact Statement. It caused her to take off work, which in turn required her to take out loans to pay for necessities. She has suffered depression, fear, and anxiety. She has attended therapy and continues to experience nightmares and difficulty sleeping from reliving the events of that day. Above all, she has lost her sense of security. She constantly looks over her shoulder and becomes startled by little sounds around her. She is afraid when customers approach her on the street. Although Individual A is attempting to move forward, she has a long road of healing ahead of her, and defendant's misconduct will likely haunt her for the rest of her life.

Finally, it should not be forgotten that defendant's violence was motivated by his pursuit for an arrow key that would provide him access to mail, checks, gift cards, or credit cards. In other words, he selfishly inflicted severe trauma upon Individual A purely for pecuniary gain. A sentence of 115 months' imprisonment is thus an appropriate and just punishment based on the nature of his offense.

> **2. A High-End Guideline Sentence of 115 Months' Imprisonment is Appropriate Considering the History and Characteristics of Defendant**

Defendant's history and characteristics further demand a high-end Guideline sentence. The government acknowledges that defendant experienced a difficult childhood. PSR ¶¶ 72-81. He unfortunately had to endure abuse from his mother and

others and was exposed to substance abuse and narcotics at a young age. *Id*. ¶¶ 97-103. Nevertheless, his adult criminal history is extensive and spans more than three decades. Overall, defendant has spent almost the entirety of his adult life under some form of probation, conditional discharge, imprisonment, or parole.

Prior to his instant offense, he compiled *more than a dozen* prior felony convictions. Three of those convictions involved the distribution of controlled substances. Even more troubling, four more convictions involved either armed violence, robbery, or the unlawful possession of a firearm. On top of that, he also has convictions for burglary, domestic battery, endangering the life of a child, driving under the influence, and possession of a controlled substance (three times). But for the technical untimeliness of some of his convictions, defendant would easily qualify as a career offender. And at 53 years of age, defendant cannot blame his present actions on youthful indiscretion. Defendant has received severe punishments for his past deeds, including prison sentences of one year, two years, three years (numerous times), six years, and eight years. All failed to reform his criminal behavior and he quickly returned to the same misconduct. Indeed, at the time of the instant offense, defendant was on pre-trial release in the Circuit Cook of Cook County for possession of burglary tools. In that case, it alleged that defendant used another arrow key to open blue collection boxes and removed mail. His arrest in that case, which is still pending, occurred on May 16, 2023. Less than six months later, defendant robbed Individual A.

In short, defendant's repeated recidivism demonstrates an abject failure of specific deterrence and a complete disrespect for the law. Only a direct rebuke from this Court will disrupt his dangerous cycle.

### 3. A High-End Guideline Sentence of 115 Months' Imprisonment Affords Adequate General Deterrence

Another important goal of sentencing is 'to afford adequate [general] deterrence to criminal conduct.'" *United States v. Warner*, 792 F.3d 847, 860 (7th Cir. 2015) (quoting 18 U.S.C. § 3553(a)(2)(B)) (second alteration in original); *see also United States v. McQueen*, 727 F.3d 1144, 1158 (11th Cir. 2013) ("[G]eneral deterrence ... is one of the key purposes of sentencing." (quoting *United States v. Medearis,* 451 F.3d 918, 920-21 (8th Cir. 2006) (second alteration in original))). This is especially true given the heightened prevalence of violent crime in Chicago. *See United States v. Severino-Pacheco*, 911 F.3d 14, 22 (1st Cir. 2018) ("Community-based considerations are inextricably intertwined with deterrence . . . [and] the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence." (quoting *United States v. Flores-Machicote*, 706 F.3d 16, 21 (1st Cir. 2013) (alterations in original))). In 2023, the year defendant committed his offense, Chicago robberies were up 23% compared to the year before,[1] and overall violent crime rose to the highest levels since 2011.[2] More

---

[1] WGN, *Chicago Crime Stats 2023: Murders, Shootings Down But crime Still Stubbornly High*, https://wgntv.com/news/chicagocrime/chicago-crime-stats-2023-murders-shootings-down-but-crime-still-stubbornly-high/ (last visited Feb. 27, 2025).

[2] CBS News, *Here's What's Happening With Crime in Chicago in 2023*, https://www.cbsnews.com/chicago/news/heres-whats-happening-with-crime-in-chicago-in-2023/ (last visited Feb. 27, 2025).

specifically, robberies of United States Postal Service employees continue to plague the city. According to data from the United States Postal Inspection Service, robberies of postal employees in Chicago increased from two robberies in 2018 to 57 robberies in 2023, a staggering 2,750% increase.[3] The Court's sentence should strive to reduce these figures by deterring other, similarly situated individuals from engaging in similar misconduct.

**B.    Supervised Release**

Under 18 U.S.C. § 3583(b)(2), the Court may impose a three-year term of supervised release. Given defendant's violent offense conduct and demonstrated recidivism, the government agrees with the three-year term recommended by probation. *See United States v. Armour*, 804 F.3d 859, 868 (7th Cir. 2015) (holding that a district court's justification for imposing a term of imprisonment can also apply to a term of supervised release); *see also United States v. Bloch*, 825 F.3d 862, 869-72 (7th Cir. 2016) (holding that courts are not required to "provide two separate explanations, one for the term of imprisonment and one for the term of supervised release"). The government does not object to the mandatory, discretionary, and special conditions proposed by probation.

**C.    Restitution**

Pursuant to 18 U.S.C. § 3663A, the Court must order defendant to make full restitution to Individual A. As stated above, Individual A has suffered not only emotionally but financially because of this offense. The government is therefore

---

[3]https://abc7chicago.com/post/chicago-usps-postal-workers-endangered-country-data-shows/14863517/ (last visited February 26, 2025.)

seeking $9,285.75 in restitution. Because of the fear and trauma that Individual A experienced, she had to take leave from work. It came to a point where she had to be placed on the United States Post Office Worker's Compensation Program. Through this program, she only received approximately 60% of her regular salary. Individual A then had to take out loans to pay for her personal expenses including rent, utilities, and car payments. Defendant's actions caused the trauma and thus the financial loss to Individual A and therefore the government seeks restitution in the amount of $9,285.75.

### D.    Fine

The government does not believe a fine is warranted in this case. In determining an appropriate fine, the Court should first consider any "punishments prescribed by statute," because "'judgments about the appropriate punishment for an offense belong in the first instance to the legislature.'" *United States v. Davis*, 859 F.3d 429, 435 (7th Cir. 2017) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336 (1998)). The Court should also consider the factors set forth in 18 U.S.C. § 3572(a), as well as the appropriate factors under 18 U.S.C. § 3553(a). *Id.* at 436; *see also* U.S.S.G. § 5E1.2(d).

Here, the statutory maximum fine is $250,000. The Guidelines suggest a fine between $20,000 and $200,000. Nevertheless, the government does not believe a fine is appropriate given requested imposition of a separate restitution order.

**V.    Conclusion**

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of 115 months' imprisonment, a three-year term of supervised release, and restitution in the amount of $9,285.75.

Respectfully Submitted,

MORRIS PASQUAL
ACTING UNITED STATES ATTORNEY

By:    /s/ *Mary McDonnell*
Mary McDonnell
Special Assistant United States Attorney
United States Attorney's Office
219 South Dearborn, 5th Floor
Chicago, Illinois 60604

Dated: February 28, 2025