IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 24 CR 225-1 |
| v. | ) | |
| | ) | Hon. Andrea R. Wood |
| RICHARD THOMPSON | ) | |

## RICHARD THOMPSON'S SENTENCING POSITION

Richard Thompson's life includes a history of traumatic physical and verbal abuse, sexual abuse, homelessness, violence, and addiction. Those conditions are sadly too prevalent in criminal cases within this district. But as described below, the details of the horrors suffered by Mr. Thompson are exceptional. There is no excuse for his behavior in this case – and he makes none for himself. But the pain that he has suffered is quite extraordinary and it is easy to see why he ended up on this path. Now – with his first federal case – he has spent significant time with undersigned counsel's mitigation team. He has reflected on his personal history and understands how he ended up on this path and what he needs to do to self-correct. For the reasons stated below, the defense requests a sentence of 84 months in custody.

## I. There Is One Objection to the Criminal History Calculation in the Presentence Investigation Report

The defense has no objections to the Presentence Report's ("PSR") calculation of the total offense level in this case and one objection to the criminal history calculation. The PSR concludes that the robbery conviction in this case carries a base offense level of 20. PSR ¶15. Mr. Thompson also receives +2 enhancement for taking a postal arrow key. PSR ¶16. He receives a +5 enhancement for possessing or brandishing a firearm during the offense. PSR ¶17. After acceptance of responsibility, he has a total offense level of 24.

Probation calculated Mr. Thompson's criminal history as resulting in 10 criminal history points which yields a criminal history category of V. In category V, Mr. Thompson's Guideline range is 92 to 115 months. PSR ¶117. The defense submits that Mr. Thompson has 9 criminal history points and a criminal history category of IV. More specifically, there is a conviction in the PSR at paragraph 40 that yielded 1 criminal history point. Mr. Thompson was convicted of DUI-related offenses and received a sentence of 30 days in jail and 2 years of probation. *Id.* Under U.S.S.G. § 4A1.1(c) (Application Note 3), this conviction cannot garner criminal history points because the sentence was imposed more than 10 years prior to the commencement of the offense at issue in this case. In other words, the sentence was imposed on July 26, 2012

but the offense conduct in this case was November 10, 2023. Therefore, Mr. Thompson should not receive a criminal history point for this conviction. As a result, he drops down to criminal history category IV and his guideline range is 77-96 months.

## II. The §3553 Factors Support a Sentence of 84 months in custody

### a. Criminal History Calculation

As stated above, there is one criminal history objection to the calculation of the guidelines. Separate and apart from the issue with that conviction, the defense submits that there is another consideration related to criminal history that the Court should keep in mind. More specifically, Mr. Thompson receives 3 criminal history points for a 2008 conviction. PSR ¶38. With respect to that conviction, he was arrested on March 18, 2008 for delivery of a controlled substance and was sentenced to 3 years IDOC on August 6, 2008. *Id.* Under the Guidelines, "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted *unless the defendant's incarceration extended into this fifteen-year period.* U.S.S.G. §4A1.1 App. Note 1 (emphasis added). In this case, the commencement of the instant offense was November 10, 2023 therefore the imposition of the sentence (on August 6, 2008) was more than 15 years prior to the offense conduct here. PSR ¶5. However, the conviction garners 3

criminal history points because Mr. Thompson was incarcerated until March 13, 2009 (which was when he was released to parole). PSR ¶39. Said another way, Mr. Thompson's incarceration extended just six months into the fifteen-year period that dates back from the offense conduct in this case (the 15-year period would begin November 10, 2008). Although the defense does not object to the application of criminal history points under the rubric of the Guidelines, the defense simultaneously submits that under §3553, the Court should consider the age of this conviction and that the sentence itself was imposed more than 15 years prior to the offense conduct in this case. If not for these three criminal history points, Mr. Thompson would fall into criminal history category III (keeping in mind his guideline objection above) which would drastically reduce his guideline range to 63 to 78 months. The requested sentence is above the high-end of that range.

The defense admits that there are a number of old convictions that do not garner points as well as a number of arrests that Mr. Thompson has sustained. However, Mr. Thompson is getting criminal history points for all sentences that fall within the parameters of the Guidelines and the defense suggests here that a 2008 conviction where sentence was imposed more than 15 years prior to the instant offense conduct should be discounted under §3553.

### b. Personal history and characteristics

Mr. Thompson has suffered at the hands of both of his parents from the moment he was born. His father, who he has not had contact with since 2019, was a pimp while Mr. Thompson was growing up and has approximately 30 other children. PSR ¶72. Mr. Thompson's father was addicted to cocaine and heroin and was in and out of custody. *Id.* His mother was essentially absent from his life during his formative childhood years – often on drug benders of her own. Mr. Thompson was raised by his grandmother for the first 7 years of his life and in fact, thought that she was his mother. *Id.* at ¶73. He recalls that a woman would come around the house once in awhile and he later learned that she was actually his mother. *Id.* His mother was addicted to cocaine, crack, alcohol, heroin, and PCP throughout his life. *Id.* At the age of 7, Mr. Thompson went to pick up his baby sister and realized she had died (later learning the cause of death was SIDS). *Id.* at 76. These are just the origins of Mr. Thompson's trauma but unfortunately many other abuses ensued.

Once his grandmother had a stroke, Mr. Thompson and his siblings lived in the projects with his mother. PSR ¶77. She would collect welfare checks and often leave the children unattended for days at a time. *Id.* Mr. Thompson recalls that they were often locked in the house, left to fend for themselves. Other times, they would escape and steal food from the local

5

store because there was no food in the house. *Id.* If she learned of them leaving the house, Mr. Thompson's mother would physically beat the children. He relayed to undersigned counsel's mitigation team that he once woke to his mother beating him with a broom handle because he had left the house to get food. As recounted in the PSR, "whippings" from his mother included being hit with a belt. PSR ¶76. A painful and illustrative remark by Mr. Thompson captures it all: when asked if he was abused as a child in his presentence interview, Mr. Thompson stated "It wasn't just abuse, it was assault and battery on kids." *Id.* at ¶76. As if things couldn't get worse, Mr. Thompson was also sexually abused by a neighbor at the age of 8. *Id.* at ¶79.

With the above-described origin story, it is no wonder that Mr. Thompson took to gang life and drugs. To be clear, he does not make any excuses for his conduct. At his allocution, he intends to express genuine remorse for his actions, and particularly for the victim in this case. But it is also important to acknowledge that he was all but set up for a life of drug use. Mr. Thompson drank alcohol at the age of 10. PSR ¶97. He first used cocaine at age 16 but became addicted to it in his 20s. *Id.* at ¶98. He reported using heavy amounts daily from that time all the way up until his arrest in this case. *Id.* He similarly has a decades-long history of daily heroin abuse. *Id.* at ¶99.

Mr. Thompson is clear-eyed about his past trauma and his own substance abuse. He understands that he grew up around drugs and that his mother has played a large role in his usage. Having now served time on a federal case – and considering he is getting older in age – Mr. Thompson seems to understand what got him to this point and what he would need to do to change his future path. His addiction is obviously no excuse for his offense conduct. At the same time, one can understand how he ended up on such a destructive trajectory. Undersigned counsel spoke to Mr. Thompson's son, Tyrick Thompson. Tyrick did not sugar-coat Mr. Thompon's absence from his life. But he did corroborate the suffering Mr. Thompson endured as a kid (Tyrick himself lived with Mr. Thompson's mother for a period of time and confirmed her drug addiction and that she had Tyrick in squalid conditions inappropriate for a child). Tyrick suggested that he believes that Mr. Thomspon wants to be a good father and that it is not the case that Mr. Thompson is simply indifferent. He stated that Mr. Thompson could simply not be the father that Tyrick needed for the long-term. For a period of time, Tyrick did live with Mr. Thompson and Tyrick said that Mr. Thompson provided everything he needed. Unfortunately that did not last as Mr. Thompson found himself again in the cycle of the criminal justice system. What this does suggest is that there is hope that Mr. Thompson can be the

best version of himself. He seems highly motivated to reach that point and to be a constructive presence in the life of his son.

### c. Conduct while in custody

Kankakee is by all accounts a very difficult place to do time. Mr. Thomspon has tried to be as productive as possible with the limited resources available to him. He has completed a variety of courses many of which are focused on substance abuse. *See* Thompson Transcript and Certificates, attached as Exhibit A.

### d. "Hard Time" credit at Kankakee

Since his arrest, Mr. Thompson has been detained at the Jerome Combs Detention Center in Kankakee. Mr. Thompson submits that it is relevant that his conditions of confinement have been particularly poor. The Seventh Circuit has held that a sentencing court may properly consider the harshness of the prison conditions in fashioning a just sentence. *See United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007).

At Kankakee, there are no in-person visits whatsoever. Family contact is only through a tablet paid for by the inmate. There is no outdoor recreation time and no windows accessible to the inmates and programming is severely limited. The defense submits that the year and a half year that Mr. Thompson has spent under these conditions should be factored into an appropriate sentence.

### III. Conclusion

Mr. Thompson's guidelines as calculated by the defense are 77-96 months. Under § 3553, the defense has argued that there is an older conviction, without which the guidelines would be 63-78 months. Mr. Thompson has also experienced a plethora of trauma and hardship but is committed to finding a different path going forward. For all of the foregoing reasons, the defense requests a sentence of 84 months in custody.

    Respectfully submitted,

    FEDERAL DEFENDER PROGRAM
    John Murphy
    Executive Director

    By: *s/ Seema Ahmad*
        Seema Ahmad
        Counsel for Richard Thompson

SEEMA AHMAD
FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8344

# CERTIFICATE OF SERVICE

The undersigned, Seema Ahmad, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**RICHARD THOMPSON'S SENTENCING POSITION**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on September 11, 2025, to counsel/parties that are non-ECF filers.

By: */s/ Seema Ahmad*
SEEMA AHMAD
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8344